

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed August 1, 2006             **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RAUL BARRAZA, | § | Case No. 06-40220-RFN-7 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION

#### Introduction

In this case the United States Trustee has moved to dismiss the debtor's chapter 7 case as presumptively abusive under the means test in section 707(b)(2)(A). The debtor attempts to avoid the presumption of abuse by (a) taking a standard $475 ownership allowance for a truck that is neither financed nor leased, and (b) deducting $915 per month from his current income to account for loan repayments on two loans from the debtor's 401(k) plans. The court reiterates its holding in *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006), that the Local Standards do not permit a debtor to take a standard ownership allowance for a vehicle that is neither financed nor leased.

Additionally, the court holds that 401(k) loan repayments are not Other Necessary Expenses under section 707(b)(2)(A)(ii)(I) if the only consequence of defaulting on such loans is treating the loans as taxable distributions to the debtor. For these and other reasons set forth herein, the court conditionally grants the Trustee's motion to dismiss.[1]

**Background Facts**

Raul Barraza filed a voluntary chapter 7 petition on January 31, 2006. Because the debtor filed after October 17, 2005, his case is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. S 256, 109-8, 119 Stat. 23 (2005) ("BAPCPA").

The debtor's schedules reflect that he works two jobs, one with Home Depot, the other with Central Freight Lines. His monthly income before any deductions is approximately $5,410.

Although the debtor is divorced, he pays the mortgage note on the home in which his wife and children now live. The debtor lives with his girlfriend and pays her $400 per month to cover his living expenses and to contribute to her household expenses.

The debtor drives a 1988 Chevrolet pickup truck against which there is no debt. His schedule of expenses reflects that he lives modestly and on a tight budget. In addition to the $75,000 debt on the home now occupied by his wife, the debtor has accumulated $143,000 of unsecured debt. However, $85,000 of this debt is attributable to a home loan note which he co-signed on behalf of his brother. The remainder of the debtor's unsecured debt was accumulated over a period of ten years.

---

[1] The following constitute the findings of fact and conclusions of law of the court with respect to the Trustee's motion to dismiss.

Nothing about the debtor's lifestyle suggests that he has lived extravagantly or that he has been reckless in dealing with his finances. On the contrary, the record suggests that the debtor is a conscientious worker who filed for bankruptcy because he was no longer able to make ends meet. Nevertheless, the United States Trustee has moved to dismiss the debtor's case, contending that the debtor's chapter 7 filing is presumptively abusive under section 707(b)(2)(A) of the Bankruptcy Code.

Two factors govern whether the court must presume abuse in this case. First, in his means test calculation the debtor has claimed an ownership expense allowance under the Local Standards in the amount of $475 for his eighteen-year-old truck. Second, the debtor contends that he is entitled to deduct from current monthly income the sum of $915, which represents loan repayments on loans from two 401(k) plans. If these sums, along with other undisputed deductions, are deducted from the debtor's current monthly income, no presumption of abuse arises under section 707(b)(2)(A).

The Trustee objects to these deductions. Relying upon this court's ruling in *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), the Trustee contends that the debtor is not permitted to deduct the standard ownership allowance for a vehicle that is not subject to a note or a lease. The Trustee next argues that no portion of section 707(b)(2)(A) permits the debtor to deduct his 401(k) loan repayments from his current monthly income.

**The Standard Ownership Allowance for Non-Financed, Non-Leased Vehicles**

In *Hardacre*, this court held that a debtor may not claim a standard ownership deduction for a vehicle that is neither financed nor leased by the debtor. 338 B.R. at 728.

The debtor argues that *Hardacre* does not apply here because the debtor is not attempting to take an impermissible "double-dip deduction" as the debtor did in *Hardacre.*

The debtor's attempt to distinguish his facts from those in *Hardacre* is unavailing because the court's ruling in that case was not predicated upon any attempt by the debtor there to overreach.  Instead, the court's ruling was predicated upon the language of the Local Standards, which do not permit an ownership expense allowance for a vehicle that is not subject to a note or a lease.  *See* Internal Revenue Service Collection Financial Standards, www.irs.gov/individuals/article/0,,id=96543,00.html ("The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense."); *see also* Internal Revenue Manual ("IRM") § 5.15.1.7 (05-01-2004) ("If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.").  The same analysis applies here.

The debtor argues, however, that limiting the standard ownership allowance to those debtors who make car payments has a disparate and unfair impact upon the most impoverished debtors; those debtors who can afford to finance cars are rewarded, while those who are unable to finance cars are punished.  According to the debtor, this unfairness is exacerbated by the fact that a debtor who has no car note or lease is more likely to drive an older vehicle, which is likely to require more major repairs.

Although not characterized as such, the court construes the debtor's argument as an argument that the court's ruling in *Hardacre* can lead to absurd results or, at least, results that are demonstrably at odds with congressional intent and, as such, should be set aside.  *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989).  However,

4

the debtor does not demonstrate that *Hardacre's* ruling leads to an absurd result in his case, but instead argues that it treats him unfairly vis-a-vis other debtors. At the hearing on the Trustee's motion to dismiss, the debtor's counsel emphasized that the debtor was not the type of debtor that Congress was after when it passed BAPCPA. After all, this debtor works 80 hours per week at two jobs, pays his child support, pays his taxes, and lives modestly.

The court is not free to pursue statutory construction in the manner suggested by the debtor. The starting point for the court's analysis is not whether the debtor's lifestyle makes him deserving of one form of relief or another, but the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 (1985). In this instance, section 707(b)(2)(A)(ii)(I) permits debtors to claim certain standard allowances in accordance with the Local Standards adopted by the Internal Revenue Service. The Local Standards state unequivocally that only debtors who have financed or leased automobiles are entitled to claim an ownership allowance. *See* Internal Revenue Service Collection Financial Standards, www.irs.gov/individuals/article/0,,id=96543,00.html; IRM § 5.15.1.7 (05-01-2004). *See also In re McGuire,* 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006) ("Thus, if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS standards.").

If anything, the debtor seems to suggest that section 707(b)(2)(A)(ii)(I) denies him equal protection because it deprives him of access to chapter 7 when other less-deserving debtors can file for relief under that chapter. There are several responses to this argument. First, in *United States v. Kras*, 409 U.S. 434, 446 (1973), the Court held that there is no constitutional right to discharge one's debts in bankruptcy. If there is no

5

constitutional right to a discharge in bankruptcy, it follows that there is no constitutional right to file under chapter 7 rather than chapter 13. Moreover, because bankruptcy legislation is in the area of economics and social welfare and does not touch upon a suspect criteria (such as race, nationality or alienage), the standard for measuring the propriety of Congress's action is rational justification. *Id.*

As the court observed in *Hardacre*, the purpose of the means test is to "ensure that those who can afford to repay some portion of their unsecured debts be required to do so." 338 B.R. at 725, quoting 151 CONG. REC. S2470 (March 10, 2005). In drafting the means test, Congress apparently concluded that debtors who own vehicles outright have a greater ability to commit funds to repay unsecured creditors than debtors who have financed or leased vehicles. The court cannot conclude that this assumption has no rational basis.

The conclusion of rationality is bolstered by at least two other facts. First, Congress has not determined that debtors who own vehicles outright should not receive any expense allowance for those vehicles. Instead, the Local Standards permit all vehicle owners to claim an operating expense deduction for up to two vehicles, regardless of whether the vehicles are financed, leased, or owned outright. *See* IRS Local Transportation Expense Standards – South Central Region available online at [http://www.usdoj.gov/ust/eo/bapcpa/bci_data/IRS_Trans_Exp_Stds_SO.htm](http://www.usdoj.gov/ust/eo/bapcpa/bci_data/IRS_Trans_Exp_Stds_SO.htm). Second, the Internal Revenue Service provides that in situations where the taxpayer owns a vehicle that is over six years old and/or has reported mileage of 75,000 miles or more, an additional operating expense of $200 will generally be allowed. IRM § 5.8.5.5.2 (09-01-

6

2005); *see In re McGuire*, 342 B.R. at 613-614 (authorizing the $200 expense deduction for vehicles meeting this description).[2]

Moreover, the debtor's disparate impact argument ignores the fact that the means test merely creates a presumption of abuse. That presumption may be overcome by "demonstrating special circumstances." 11 U.S.C. § 707(b)(2)(B). Conversely, a debtor who avoids the presumption of abuse may yet be subject to having his case dismissed if the court finds that he filed his petition in bad faith or the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3).

Finally, it is a mistake to view the means test as a formula for measuring the culpability of a particular debtor for the circumstances that led him into bankruptcy, and, hence, whether the debtor is worthy of one form of relief rather than another. The means test does not distinguish those who have tried hard from those who have hardly tried. It is a blind legislative formula that attempts to direct debtors to a chapter that provides for at least some measure of repayment to unsecured creditors over a period of years. Like any other effort at social or economic legislation, it is not perfect. Consequently, the fact that the debtor can hypothesize examples in which the means test operates unfairly does not, by itself, serve as a basis for the court to refuse to apply it here.

## 401(k) Loan Repayments

The debtor participates in two 401(k) plans, one with Home Depot, the other with Central Freight Lines. The debtor has borrowed money from each of these plans. His payments on the loans are approximately $915 per month. The debtor has deducted this sum from his current monthly income as part of his means test analysis. Specifically, the

---

[2] The United States Trustee and the Chapter 13 Trustees of the Northern District of Texas routinely do not oppose the deduction of $200 for vehicles satisfying this description. Indeed, the Trustee has allowed an additional $200 operating expense for the debtor's truck in this case.

debtor deducts this sum at line 26 on Form B22A, which is entitled "Other Necessary Expenses: mandatory payroll deductions." Form B22A instructs the debtor to "[e]nter the total average monthly payroll deductions that are required for your employment, such as mandatory retirement contributions, union dues, and uniform costs."

The debtor argues that his 401(k) loan repayments are "mandatory" within the meaning of Form B22A. As support for this argument, the debtor notes that section 362(b)(19) expressly exempts such loan repayments from the automatic stay, and that section 1322(f) provides that such loan repayments do not constitute disposable income for chapter 13 plan purposes.

While the debtor focuses his argument upon Form B22A's "mandatory payroll deduction" language, the court must focus upon the language of the statute and not the language in the form. The only potential authority for deducting these payments is section 707(b)(2)(A)(ii)(I), which provides that a debtor may deduct from current monthly income "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." The categories of Other Necessary Expenses can be found in section 5.15.1.10 of the Internal Revenue Manual. *In re Lara*, 2006 Bankr. LEXIS 1170, at *5 (Bankr. N.D. Tex. June 28, 2006).

The Internal Revenue Manual has no specific category addressing 401(k) loan repayments as Other Necessary Expenses. However, it does include a category for "involuntary deductions." The manual permits an "involuntary deduction" to be deducted from income if the deduction is a requirement of the debtor's job. IRM § 5.15.1.10 (05-

8

01-2004). Examples of involuntary deductions include union dues, uniforms, and work shoes. *Id.*

At the hearing on the Trustee's motion to dismiss, the debtor introduced Central Freight Lines' 401(k) plan description and an excerpt from Home Depot's 401(k) plan description. Both plans provide that loans must be repaid via payroll deductions. And, in fact, both of the debtor's employers routinely deduct the loan repayments from his paychecks. However, the requirement to repay the 401(k) loans is not a job requirement in the sense that union dues, uniforms, and work shoes are. The consequence of a debtor's failure to comply with the requirement to pay union dues, wear a particular uniform, or wear certain shoes is, in all likelihood, loss of employment. By contrast, the consequence of the debtor defaulting on his 401(k) loans is that the loans are treated as taxable distributions. Consequently, the plan loan repayments do not qualify as "involuntary deductions" under the Internal Revenue Manual.

It could be argued that the 401(k) loan repayments qualify as Other Necessary Expenses under the category of "Unsecured Debts." IRM § 5.15.1.10 (05-01-2004). However, expenses may only be deducted under this category if (a) they provide for the health and welfare of the taxpayer and/or his family, or (b) they are for the production of income. *Id.* The 401(k) loan repayments here do not satisfy either test. The debtor is not required to repay the loans in order to provide for the health and welfare of himself or his family. And, the loan repayments are not necessary for the production of income. While the debtor may incur a tax penalty if he defaults on the loans, his repayment of the loans is not a condition to his continued employment by either company. *See In re Bell,* 264 B.R. 512, 517 (Bankr. S.D. Ill. 2001) (holding that the possibility that the debtor may

9

suffer adverse tax consequences for failure to repay 401(k) loan does not render 401(k) loan repayments "reasonably necessary for support" under the "mandatory/voluntary" distinction of the majority line of cases under pre-BAPCPA law). As such, the 401(k) loan repayments are not Other Necessary Expenses under section 707(b)(2)(A)(ii)(I).

Neither section 362(b)(19) nor section 1322(f) alters this result. First, section 707(b)(2)(A) does not refer to or incorporate either of these provisions. Likewise, neither of these sections provides for its application to section 707(b)(2)(A). This court must presume that Congress acted intentionally when it failed to incorporate sections 362(b)(19) and 1322(f) into the means test. *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.* 543 U.S. 111, 118 (2004) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

As a matter of statutory construction, the court has no basis upon which to conclude that the 401(k) loan repayments here qualify as Other Necessary Expenses under section 707(b)(2)(A)(ii)(I). However, the debtor poses a logical question. Given that (a) section 1322(f) provides that 401(k) loan repayments do not constitute disposable income under section 1325 (without regard to whether such loans qualify as involuntary deductions or unsecured debts), (b) section 1322(f) provides that any such loan may not be materially altered by the debtor's plan, and (c) section 362(b)(19) does not stay the employer's automatic deduction of such loan repayments from the debtor's salary, why are these sums not deducted from current monthly income when determining chapter 7 eligibility? Stated another way, why would Congress presume under section

10

707(b)(2)(A) that this amount of money could be used to pay unsecured creditors, and then deny unsecured creditors access to that money in chapter 13? The court confesses that it does not know. Nevertheless, the court's lack of prescience as to Congress's reasoning does not permit it to revise a formula that is otherwise clear on this particular point.

### The Debtor's Zero-Dollar-Plan Argument

The debtor also argues, however, that Congress's treatment of 401(k) loans is not just questionable because it lacks parallelism in chapters 7 and 13, but because it in fact leads to a ridiculous result in this case. According to the debtor, once he is permitted to deduct his 401(k) loan repayments from his income for chapter 13 purposes, he will have a net disposable income of minus $20. Thus, the debtor argues that the means test forces him into chapter 13, but then requires him to pay nothing under his plan.

Although not expressly framed as such, the debtor's argument could be construed as an articulation of a "special circumstance" that should overcome the presumption of abuse under section 707(b)(2)(B) or, as an argument that section 707(b)(2)(A) should be construed to avoid such an absurd result. Before addressing this issue, the court investigates the debtor's assertion that he would have no disposable income if he were required to convert his case to a case under chapter 13.

The debtor's current monthly income is $5,410. As an above-median income debtor (which the debtor does not dispute), the debtor would be required to calculate his reasonably necessary expenses under chapter 13 in accordance with section 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3)(A). Those expenses include the following undisputed deductions: $691 for food, clothing, household supplies and personal care under the

11

National Standards; $342 for housing, utilities, and non-mortgage expenses under the Local Standards; $332 for vehicle operating expenses under the Local Standards; $200 for additional operating expenses for the 1988 truck; $1,000 for taxes; $55 for life insurance; $30 for health care; $50 for telecommunications; $195 for health insurance, disability insurance, and health savings accounts; $1,045 for future payments on secured claims; $28.50 for chapter 13 administrative expenses;[3] and $915 for 401(k) loan repayments.

Two expense items remain in dispute. The debtor asserts that if he were a chapter 13 debtor he would be entitled to deduct $140 per month for post-petition contributions withheld by his employer for a 401(k) plan. This deduction is not reflected in the Trustee's pro forma Form B22C for the debtor. The debtor correctly asserts an entitlement to this deduction. Pursuant to section 541(b)(7), such contributions withheld by a debtor's employer do not constitute disposable income under section 1325(b)(2). Consequently, in arriving at projected disposable income under section 1325(b)(1)(B), the debtor's current monthly income must be reduced by this amount.

Next, the debtor claims that if he were in chapter 13 he could deduct $700 per month for court-ordered payments as an Other Necessary Expense.[4] However, as the Trustee points out, the debtor's child support obligation ends on July 31, 2006. Consequently, the Trustee contends that the debtor should not be permitted any deduction for child support payments.

---

[3] The debtor has not claimed this deduction, but the Trustee has allowed it.

[4] At the hearing, the debtor testified that he was required to make court-ordered payments of $700 a month for child support. In a post-hearing brief, the debtor reduced this sum to $430 for reasons that he did not explain. For the purposes of this opinion, the court assumes that the support obligation is $700 per month.

12

Although section 1325(b)(3) refers to section 707(b)(2)(A) and (B) for calculating expense allowances for above-median debtors, section 1325(b)(1)(B) requires a forward-looking analysis when it comes to calculating projected disposable income. *In re Hardacre*, 338 B.R. at 722 (holding that "projected disposable income" must be based upon the debtor's anticipated income during the term of the plan, not merely an average of pre-petition income); *accord In re Kibbe*, 342 B.R. 411, 414 (Bankr. D.N.H. 2006); *In re Jass*, 340 B.R. 411, 416 (Bankr. D. Utah 2006); *In re Grady*, 343 B.R. 747, 751 (Bankr. N.D. Ga. 2006); *In re Dew,* 2006 WL 1691130, at *4 (Bankr. N.D. Ala. June 21, 2006); *but see In re Alexander, et al.*, 2006 Bankr. LEXIS 1272, at *17 (Bankr. E.D. N.C. June 30, 2006) (holding that in arriving at projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math"). Just as the phrase "projected disposable income" requires a forward-looking analysis when it comes to the debtor's income during the applicable commitment period, it similarly requires a forward-looking analysis with respect to the debtor's expenses during that period as well. *In re Renicker*, 342 B.R. 304, 309 (Bankr. W.D. Mo. 2006). Indeed, section 1325(b)(2) requires that the debtor's current monthly income be reduced by the "amounts reasonably necessary *to be expended*" by the debtor, thus reinforcing the conclusion that the expense analysis is a forward-looking process. 11 U.S.C. § 1325(b)(2) (emphasis added).

The debtor filed his petition on January 31, 2006. During the five-year commitment period of his plan, the debtor would pay $4,200 in child support; that is, $700 per month for six months. After dividing $4,200 by 60 (the applicable commitment period for the debtor), the debtor would be entitled to an expense deduction for court-ordered payments in the amount of $70 per month.

After reducing the debtor's current monthly income by $140 to account for payroll deductions for the debtor's 401(k) plan contributions, and increasing his deductions by $70 for court-ordered child support payments, the debtor would be left with a projected disposable income of $316.50.[5] Because this calculation suggests that the debtor would have income to contribute to a chapter 13 plan, the court need not address the question of whether the operation of the means test here would lead to an absurd result. Likewise, the court need not address the question of whether a "special circumstance" exists when the effect of applying the means test would be to force the debtor into a chapter 13 where the debtor would have no projected disposable income. S*ee In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (holding that a zero-percent chapter 13 plan does not constitute a "special circumstance" under section 707(b)(2)(B)).

### The Debtor's $400 Monthly Contribution to His Girlfriend

At the hearing, the debtor requested the court to consider the fact that he pays his girlfriend $400 per month to help cover his living expenses and to contribute to the living expenses of her and her three children. It is not clear whether the debtor is asking that this amount (a) be deducted from the debtor's current monthly income under section 707(b)(2)(A) as part of the means test analysis, (b) be considered as a "special circumstance" under section 707(b)(2)(B) which helps rebut the presumption of abuse, or (c) be considered as part of the debtor's projected disposable income analysis under section 1325(b), and, thus, be used to bolster his absurdity argument.

---

[5] In a post-hearing brief, the Trustee observed that the debtor's 401(k) loans will be repaid before the conclusion of the sixty-month commitment period. Accordingly, the Trustee argued that the monthly expense for 401(k) loan repayments should likewise be reduced, leaving a larger disposable income. Although the court agrees in principle with this argument, it makes no such adjustment here because the court already has concluded that the debtor's arguments have been negated by the existence of disposable income. Moreover, the evidence at the hearing did not establish with precision when the 401(k) loans would be paid in full. In light of this fact, the court does not purport to precisely compute the debtor's projected disposable income under a chapter 13 plan.

14

Insofar as section 707(b)(2)(A) is concerned, the debtor already has received an allowance under the National Standards for food, clothing and household supplies, as well as an allowance under the Local Standards for non-mortgage housing expenses. Together, these allowances total $1,033. At most, section 707(b)(2)(A)(ii)(I) might permit the debtor an additional five percent allowance for food and clothing expenses, but this would only increase the debtor's allowable deductions by $34.55, an amount that would not alter the presumption of abuse. However, nothing in section 707(b)(2)(A) authorizes a deduction for voluntary support as to which the debtor is morally, but not legally obligated.

If the debtor is contending that the $400 support payment constitutes a special circumstance under section 707(b)(2)(B), his argument must be denied due to his failure to sustain the evidentiary burden imposed by that section. Assuming without deciding that this type of expense could constitute a special circumstance, the debtor was required to itemize each additional expense or adjustment of income, provide documentation for each such expense or adjustment, and give a detailed explanation of the special circumstances that make those expenses or adjustments necessary and reasonable. 11 U.S.C. § 707(b)(2)(B); *In re Renicker,* 342 B.R. at 310. At the hearing, the debtor failed to provide the required itemization and documentation to justify this additional expense.

Finally, in order for the court to consider the $400 support contribution as an expense to be deducted pursuant to section 1325(b), the debtor would bear the same burden as he would in attempting to overcome the presumption of abuse under section 707(b)(2)(B).[6] 11 U.S.C. § 1325(b)(3) (requiring above-median debtors to calculate

---

[6] Again, this assumes that such a contribution could be deducted. The court expresses no opinion as to whether such an expense can constitute a "special circumstance" under section 707(b)(2)(B).

expenses in accordance with subparagraphs (A) and (B) of section 707(b)(2)). Inasmuch as the debtor failed in any way to substantiate these additional expenses, the court cannot consider them for the purposes of this motion.

## **Conclusion**

For the reasons stated herein, the court finds that the Trustee's motion is well taken. By separate document, the court will issue an order conditionally granting the motion. The debtor will have fifteen days from the issuance of the order to convert his case from a case under chapter 7 to a case under chapter 13, failing which his case will be dismissed.

\* \* \* END OF MEMORANDUM OPINION \* \* \*